IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARIA GRESHAM,                    :
                                  :
     Plaintiff,                   :
                                  :        CIVIL ACTION
v.                                :
                                  :        NO. 1:10-CV-1301-RWS-ECS
CITY OF ATLANTA,                  :
MAJOR PERDUE,                     :
in his official capacity,         :
GEORGE TURNER,                    :
in his individual and official :
capacities,                       :
                                  :
     Defendants.                  :

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**I.
Background**

On April 28, 2010, Plaintiff Maria Gresham ("Plaintiff") filed
this civil action against Defendant City of Atlanta, Defendant Major
Moses Perdue in his official capacity, and Chief George Turner in
his individual and official capacities ("Defendants"), alleging a
variety of federal and state claims against Defendants arising in
connection with Plaintiff's employment as a police officer with the
City of Atlanta. [Doc. 1]. In particular, Plaintiff asserts claims
for gender discrimination and hostile work environment under Title
VII of the Civil Rights Act of 1964 ("Title VII"); for denial of due
process under the Fourteenth Amendment; for retaliation under the
First Amendment via 42 U.S.C. § 1983; for breach of contract under

Georgia law; for liability under Georgia's Whistleblower Act; and for intentional infliction of emotional distress under Georgia law. [Id.]. Plaintiff seeks injunctive relief, punitive and compensatory damages, and attorney's fees. [Id. at 25].

This matter is before the Court on Plaintiff's motion for summary judgment on her First Amendment retaliation claim, [Doc. 15], and Defendants' motion for summary judgment on all of Plaintiff's claims, [Doc. 17]. For the reasons discussed herein, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment, [Doc. 15], be **DENIED**, and that Defendants' motion for summary judgment, [Doc. 17], be **GRANTED in part** and **DENIED in part**.

## II.
## Facts

### A.   Initial Procedural Matter

In response to Defendants' Statement of Material Facts, Plaintiff provided insufficient responses to several of Defendants' statements. The local rules of this court state the following:

> This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's facts with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1B.(1).

2

LR 56.1B.(2)a.(2), NDGa. Plaintiff failed to respond to a number of
Defendants' facts, namely, Defs' SMF ¶¶ 9, 10, 11, 12, 13, 14, 15,
16, 17, 18, 19, 20, 21, 22, 23, 24. Accordingly, these enumerated
facts will be deemed admitted. In addition, in response to several
of Defendants' other facts, Plaintiff states merely that she
"disputes" or "disagrees" with those facts, without providing
supporting citations. See Pl's SMF ¶¶ 1, 3, 6, 7, 8. Accordingly,
these facts are likewise deemed admitted.

**B.  Factual Background**

When evaluating the merits of a motion for summary judgment,
the Court must view the evidence and factual inferences in a light
most favorable to the non-moving party. Frederick v. Sprint/United
Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001); Hairston v.
Gainesville Sun Pub. Co., 9 F.3d 913, 920 (11th Cir. 1993).
Applying the above standard, the Court derives the following facts
from the parties' statements of facts and from the record as a
whole:[1]

**1.  Background of Plaintiff's Employment with the Atlanta
Police Department**

Plaintiff is a City of Atlanta police officer in the Atlanta
Police Department ("APD"). [Defs' SMF ¶ 11]. In August of 2009,

---

[1]     Unless otherwise noted, this overview is taken from those
facts in the parties' statements of material facts ("SMF") that have
not been disputed.

Plaintiff was on the list of officers eligible for promotion to an investigative position, [id. ¶¶ 12, 14], where she ranked number twenty, [Pl's SMF ¶ 1].

In the spring of 2010, promotions were made to investigative positions, but Plaintiff was not promoted. [Pl's SMF ¶¶ 5-6]. It is undisputed that Plaintiff was not promoted because she had an open complaint against her with the Office of Professional Standards ("OPS") regarding an incident discussed below. [Defs' SMF ¶¶ 8, 24].

**2.  The Arrest**

In December of 2009, before any promotions to investigator from the list of eligibles were made, Plaintiff arrested an individual named Jeriel Scrubb ("Scrubb"). Plaintiff was told at the time that Scrubb was a nephew of City of Atlanta police investigator Barbara Floyd ("Floyd"). [Pl's SMF ¶ 2].[2] In the

---

[2]     Defendants admit that Plaintiff arrested an individual named Jeriel Scrubb on December 8, 2009, [Defs' Resp. to Pl's SMF ¶ 2], but object to Plaintiff's identification of Scrubb as Floyd's nephew. [Id.]. In that regard, Defendants object to the authenticity of Exhibit B to Plaintiff's motion for summary judgment, [Doc. 15], but do not specifically dispute that Exhibit B is what Plaintiff contends it to be – the arrest report written by Plaintiff from the December, 2009, arrest of Scrubb. Thus, the undersigned will consider the report as authenticated for summary judgment purposes. See Fed. R. Evid. 901(a); see also Fed. Ins. Co., 2010 WL 3842359 at *8 (citing United States v. Coohey, 11 F.3d 97, 99 (8th Cir. 1993)). Furthermore, on its face it appears to meet the requirements for consideration as a public record hearsay exception under Fed. R. Evid. 803(8)(B), which considers "matters observed pursuant to

4

arrest report, Plaintiff records that Floyd accompanied Scrubb
alone to another room, took money and two cell phones from Scrubb's
pockets, and possibly spoke to Scrubb. [Doc. 15-3 at 7]. Plaintiff
states that the "transfer of money was witnessed by other . . .
investigators." [Id.].

### 3.  Plaintiff's Response to the Incident

On December 15, 2009, Plaintiff made a "newsfeed" post on her
Facebook site,[3] which stated the following:

> Who would like to hear the story of how I arrested a
> forgery perp at Best Buy only to find out later at the
> precinct that he was the nephew of an Atlanta Police
> Investigator who stuck her ass in my case and obstructed
> it?? Not to mention the fact that while he was in my
> custody, she took him into several other rooms alone
> before I knew they were related. Who thinks this is
> unethical?

[Pl's SMF ¶ 3]; [Doc. 15-4].

### 4.  OPS Investigation Against Plaintiff

In January of 2010, OPS received a complaint regarding
Plaintiff's Facebook posting. [Defs' SMF ¶ 16 (<u>citing</u> Turner Aff.,

_____

duty imposed by law . . ., excluding, however, in criminal cases
matters observed by police officers and other law enforcement
personnel" to fall under an exception to the hearsay rule. Because
Plaintiff uses this police report in a civil case, the police report
is not hearsay.

[3]     Facebook is an internet based social networking site that
allows individuals to maintain profiles of themselves, in which
comments, photographs, and other postings may be made to certain
other persons also subscribed to Facebook.

AO 72A
(Rev.8/82)

[Ex. 11, Doc. 17, ¶ 19]). OPS then opened an investigation of Plaintiff for an alleged violation of APD's Work Rule 4.1.2 ("Public Criticism"). [Id. ¶ 15] (citing Turner Aff., [Ex. 11, Doc. 17, ¶¶ 18, 20]). Exhibit 1 to Defendants' motion for summary judgment contains the APD Work Rules. Rule 4.1.2 does not exist; however, upon review of the APD Work Rules contained in Exhibit 1, it appears that Rule 4.1.06 ("Criticism") is the applicable rule relating to "public criticism."

APD's Work Rule 4.1.06 states the following:

> Employees will not publicly criticize any employee or any order, action, or policy of the Department except as officially required. Criticism, when required, will be directed only through official Department channels, to correct any deficiency, and will not be used to the disadvantage of the reputation or operation of the Department or any employees.

[Ex. 1, Doc. 17].

During the OPS investigation, Plaintiff became ineligible for a promotion to an investigator position because "Chief Turner does not appoint individuals who have open OPS investigations pending to discretionary rank positions." [Defs' SMF ¶ 8].

After the OPS investigation concluded, the charge against Plaintiff was sustained; as a result, she received an oral admonishment. [Id. ¶ 21] (citing Turner Aff., [Ex. 11, Doc. 17, ¶¶ 36, 39]). Plaintiff's OPS file was closed in September of 2010.

[Id. ¶ 24] (<u>citing</u> Turner Aff., [Ex. 11, Doc. 17, ¶ 39]). Plaintiff is now eligible for promotion to an investigator position. [Id. ¶ 23] ("Once an OPS investigation is closed, an individual may become re-eligible for consideration of an appointment to the discretionary position."); [id. ¶ 24] ("[Plaintiff]'s OPS file [i]s closed and as such, [Plaintiff] is now eligible for an appointment to the position of Investigator.").

### III.
### Motions for Summary Judgment

**A.  Procedural Matters**

**1.  Abandonment of Claims by Plaintiff**

Defendants argue that several of Plaintiff's claims should be dismissed because Plaintiff abandoned them: hostile work environment under Title VII, due process under the Fourteenth Amendment, and breach of contract. [Doc. 25 at 6].

The undersigned agrees. Claims raised in the complaint but not briefed or argued before the Court in response to a summary judgment motion may be deemed abandoned. <u>Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1326 (11th Cir. 2000); <u>Burnett v. Northside Hosp.</u>, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) (finding that the non-movant's failure to address a claim challenged at the summary judgment stage warranted dismissal of that claim). Because Plaintiff did not defend these

7

three claims at the summary judgment stage in response to Defendants' motion for summary judgment specifically targeting those claims, [Doc. 17], **IT IS RECOMMENDED** that Plaintiff's hostile work environment, due process, and breach of contract claims be **DEEMED ABANDONED** and that summary judgment on those claims be **GRANTED**. See Coal. for the Abolition of Marijuana Prohibition, 219 F.3d at 1326; Burnett, 342 F. Supp. 2d at 1140.

### 2. Liability of Defendants Turner and Perdue in Their Official Capacities

Defendants argue that Plaintiff's claims against Defendants Turner and Perdue in their official capacities are improper because "[s]tate officers sued for damages in their official capacity are not 'persons' for the purposes of the suit because they assume the identity of the government that employs them." [Doc. 17 at 24-25] (citing Richey v. City of Lilburn, 127 F. Supp. 2d 1250 (N.D. Ga. 1999)).[4]

Defendants are correct that a suit against an individual defendant in his official capacity is considered a suit against the defendant's employing entity and not the defendant himself. Abusaid v. Hillsborough Cnty. Bd. of Comm'rs, 405 F.3d 1298, 1302 n.3 (11th Cir. 2005); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir.

---

[4] Plaintiff does not directly respond to this argument, but includes in an argument heading that Defendants Turner and Perdue should be liable in their official capacities. [Doc. 21 at 20].

AO 72A
(Rev.8/82)

1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly."). Accordingly, **IT IS RECOMMENDED** that Defendants Turner and Perdue be **DISMISSED** from this suit insofar as they are sued in their official capacities.

**B.  First Amendment Retaliation via Section 1983**

Plaintiff seeks summary judgment in her favor on her First Amendment claim, alleging that "Defendants . . . failed to promote [Plaintiff] in retaliation for her exercise of her [F]irst [A]mendment rights" when Plaintiff "spoke out against Department corruption and was passed over for promotion and reprimanded for her public outcry."[5] [Doc. 15 at 6].

**1.  Were Plaintiff's First Amendment Rights Violated?**

To establish that Defendants retaliated against her in violation of her First Amendment free speech rights, Plaintiff, as a government employee, must show that her conduct was

---

[5]      Defendants also bring a motion for summary judgment in their favor on Plaintiff's First Amendment claim. [Doc. 17 at 13-24]. For simplicity, where applicable, the undersigned combines the discussion on Plaintiff's motion for summary judgment and Defendants' motion for summary judgment on Plaintiff's First Amendment claim.

constitutionally protected and that her conduct was a substantial or motivating factor in Defendants' decisions resulting in the adverse action. <u>Boyce v. Andrew</u>, 510 F.3d 1333, 1343 n.12 (11th Cir. 2007). The Court must analyze Plaintiff's retaliation claim under the four-part <u>Pickering</u>[6] test, determining (1) whether Plaintiff's speech involved a matter of public concern; (2) whether Plaintiff's interest in speaking outweighs the government's legitimate interest in efficient public service; (3) whether the speech played a substantial part in the government's challenged employment decision; and (4) whether the government would have made the same employment decision in the absence of the protected conduct. <u>Cook v. Gwinnett Cnty. Sch. Dist.</u>, 414 F.3d 1313, 1318 (11th Cir. 2005) (<u>citing</u> <u>Bryson v. Waycross</u>, 888 F.2d 1562, 1565-66 (11th Cir. 1989)). The first two parts are questions of law, and the last two are questions of fact. <u>Cook</u>, 414 F.3d at 1318.

### a. Did Plaintiff Speak As a Citizen on a Matter of Public Concern?

The Court first must consider the threshold question of whether Plaintiff spoke as a citizen on a matter of public concern. <u>Boyce</u>, 510 F.3d at 1343. An employee's speech is considered a matter of public concern when it can be "fairly considered as

---

[6]   <u>Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205</u>, 391 U.S. 563 (1968).

relating to any matter of political, social, or other concern to the community." <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983); <u>accord Abdur-Rahman v. Walker</u>, 567 F.3d 1278, 1281-82 (11th Cir. 2009). However, if the "employee speaks not as a citizen upon matters of public concern . . . but as an employee upon matters only of personal interest," then the employee's speech is not constitutionally protected. <u>Connick</u>, 461 U.S. at 147; <u>accord Boyce</u>, 510 F.3d at 1346 (holding plaintiffs "primarily spoke as employees because they "were complaining to their superiors as employees about their workloads . . . to have their caseloads reduced") (internal quotations and citations omitted); <u>Sherrod v. Sch. Bd. of Palm Beach Cnty.</u>, 703 F. Supp. 2d 1279, 1298 (S.D. Fla. 2010) (holding that speech was a matter of public concern because plaintiff "acted independently, as a citizen in his own right, in expressing dismay over the larger societal cost attendant to the" issue about which he spoke).

Further, a public employee who speaks pursuant to her official duties is not speaking as a citizen for First Amendment purposes. <u>Vila v. Padron</u>, 484 F.3d 1334, 1339-40 (11th Cir. 2007) (holding speech accusing defendant college of breaking laws was not a matter of public concern because "[a]s part of her job duties, [plaintiff] was directly in charge of legal affairs and it was her duty to ensure the College followed all laws"); <u>see also Abdur-Rahman</u>, 567

11

F.3d at 1283 (holding speech was not a matter of public concern because "[n]one of the statements in [the plaintiffs'] reports can reasonably be separated from [their] job duties . . . , and all of their speech 'owes its existence to' those duties") (internal citation omitted).

In the present case, Plaintiff asserts that her Facebook posting was speech on a matter of public concern because the speech centered on "[p]olice [o]fficers showing favoritism and nepotism towards family members and obstructing justice to assist criminal activity on behalf of their family member . . . ." [Doc. 15 at 10]. In response, Defendants argue that Plaintiff did not speak as a citizen on a matter of public concern because "her statements were made specifically to outline Plaintiff's perceived work-related problems with another officer's [interference] in Plaintiff's arrest of an individual, all of which was directly related to her duties as a police officer." [Doc. 20 at 7-8]. Defendants also argue that Plaintiff "admits that she spoke in a public context," and thus Plaintiff "was speaking on a matter directly related to her official position and not as a private citizen." [Id. at 8].

Contrary to Defendants' argument, the undersigned finds that Plaintiff's Facebook posting did not express a personal work concern but instead expressed a concern regarding the ethics of Floyd's behavior and the obstruction of Plaintiff's case. [Doc. 15-

12

4 at 1] (Plaintiff's Facebook posting). <u>See</u> <u>Sherrod</u>, 703 F. Supp. 2d at 1298. In this case, what elevates Plaintiff's speech to protected status is that she complained that Floyd's involvement in Plaintiff's case constituted an "unethical . . . obstruct[ion]" into an open investigation. [Doc. 15-4 at 1]. This comment does not merely involve a present work concern of Plaintiff's but, rather, the integrity of the law enforcement services provided to the public at large.

Further, Plaintiff's speech did not stem from her job responsibilities as a police officer in the way that Defendants construe the relationship. <u>See</u> <u>Abdur-Rahman</u>, 567 F.3d at 1283; <u>Vila</u>, 484 F.3d at 1339-40. Defendants' assertion that "Plaintiff was speaking on a matter directly related to her official position," [Doc. 20 at 8], misses the point that Plaintiff did not speak regarding her job duties; indeed, she was not required to speak as part of her job duties. Instead, Plaintiff, on her own initiative, spoke regarding what could be characterized as departmental corruption. Plaintiff's speech therefore does not "owe[] its existence to" Plaintiff's job duties, <u>Abdur-Rahman</u>, 567 F.3d at 1283, and therefore was speech on a matter of public concern.

13

### b. Did Plaintiff's Interest in Speaking Outweigh the Government's Legitimate Interest in Efficient Public Service?

Having found that Plaintiff spoke as a citizen on a matter of public concern, the Court must next weigh Plaintiff's First Amendment interests against the government's interest as an employer in promoting the efficiency of the public services it performs through its employees. Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1289 (11th Cir. 2000). In doing so, the court considers three factors: (1) whether the speech impedes the government's ability to perform its duties efficiently; (2) the time, place, and manner of the speech; and (3) the context within which the speech was made. Id. (internal citations and quotations omitted). Though the court considers these three factors, there is no bright-line rule and no single factor is determinative. Id. In particular, outcomes have diverged in police cases, id., because police departments have "more specialized concerns than a normal government office." Reid v. City of Atlanta, 1:08-cv-1846-JOF, 2010 WL 1138456 at *9 (N.D. Ga. Mar. 22, 2010).

In this case, Plaintiff argues that she "clearly had a more important interest in speaking out against Investigator Floyd's behavior than [Defendants] had in protecting it" because "[p]olicing by its very nature[] is to ensure justice and fairness through proper investigations." [Doc. 15 at 10-11]. In response,

14

Defendants argue that "Plaintiff's interest [in criticizing Defendants' perceived wrongdoings] does not outweigh the APD's strong interests in developing a collegial atmosphere, harmonious relationships and respect for the APD's investigative and discipline policy towards possible infractions[,] departmental work rules and SOPs." [Doc. 20 at 10].

In the instant case, the balancing of interests favors Plaintiff. Plaintiff's speech does not appear to have impeded APD's ability to perform its duties efficiently; Defendants only argue in theory that APD has "strong interests in developing a collegial atmosphere," "harmonious relationships," and "respect for the APD's investigative and discipline policy." [Doc. 20 at 10]. See Stanley, 219 F.2d at 1290-91; Reid, 2010 WL 1138456 at *12 (finding the Pickering balance favored the plaintiff because the plaintiff's speech caused "no disruption of the work place or police department operations"). But see Bryson v. City of Waycross, 888 F.2d 1562, 1567 (11th Cir. 1989) (speech "not protected when it disrupted the efficient functioning of the police department"). In any event, APD's interest in collegiality and harmony, by itself, should not be found to outweigh the Plaintiff's important interest in speaking out against illegal or corrupt conduct in the department.

Plaintiff's decision to speak outside of the workplace on her private Facebook page is also entitled to some weight in

15

Plaintiff's favor. <u>Compare</u> <u>Waters v. Chaffin</u>, 684 F.2d 833 (11th Cir. 1982) (speech protected where the plaintiff police officer spoke privately with a friend while off-duty) <u>with</u> <u>Bryson</u>, 888 F.2d at 1567 (holding speech unprotected because the plaintiff police officer "chose to spend police department time broadcasting his rancor"). Plaintiff spoke outside of the workplace, and did not "spend police department time broadcasting [her] rancor," <u>Bryson</u>, 888 F.2d at 1567. Accordingly, this fact weighs in Plaintiff's favor.

Finally, Plaintiff alleges that she made her Facebook posting only after attempting to voice her complaints via official channels, [Pl's Compl. ¶ 31], and only after Defendants failed to respond to her complaints. Even when a policy is in place requiring that an employee speak through official channels only, as was arguably the case here under APD Rule 4.1.06, a plaintiff need not follow this directive. <u>Belyeu v. Coosa Cnty. Bd. of Educ.</u>, 998 F.2d 925, 930 (11th Cir. 1993) (holding that a plaintiff is not required "to consult privately with her employer regarding issues of public concern" because doing so would "ignore[] the substantial interest . . . in the open and unrestricted debate of public matters"). Thus, Plaintiff's speaking out <u>after</u> attempting to complain through the official channels weighs even more heavily in Plaintiff's favor and against Defendant.

16

Accordingly, upon consideration of the above factors, the undersigned concludes that Plaintiff's interest in speaking outweighed the government's legitimate interest in efficient public service.

### c. Did Plaintiff's Speech Play a Substantial Part in the Government's Challenged Employment Decision?

Once the Court determines that the employee's right to free speech outweighs the competing interests of the state, it must determine whether Plaintiff has presented sufficient evidence for a jury to conclude that Plaintiff's speech was a substantial motivating factor in the government's challenged employment decision. Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1291 (11th Cir. 2000). In making this determination, "we must examine the records as a whole to ascertain whether [Plaintiff] presented evidence for a reasonable jury to conclude that [her] protected speech was a 'substantial' motivating factor in the decision" not to promote her." Stanley, 219 F.3d at 1291.

Plaintiff argues that her speech played a substantial role in the government's challenged employment decision because Plaintiff "was not promoted directly following her public outcry of department corruption," and instead "was skipped on the promotion order and the lower ranked officers were promoted above her." [Doc. 15 at 11]. In response, Defendants do not directly argue this

17

point, stating that this step and the fourth step of the Pickering analysis "are issues of fact which are jury questions." [Doc. 20 at 10 n.36]. In his affidavit, however, Defendant Turner states that "[a]t [his] discretion, [he] do[es] not appoint individuals who have open OPS investigations pending to discretionary rank positions." [Ex. 14, Doc. 17].

In this case, the undersigned concludes that Plaintiff has presented sufficient evidence upon which a reasonable jury could conclude that her protected speech was a substantial motivating factor in the decision not to promote her. A close temporal connection exists between Plaintiff's Facebook posting and the OPS investigation which led to her non-selection by Defendant Turner. See Kamensky v. Dean, 148 Fed. Appx. 878, 881 (11th Cir. 2005) (holding that close temporal proximity between an adverse employment action and protected activity implies causation) (citing Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 745 (11th Cir. 1996)). On the other hand, the record does not establish without a genuine issue of material fact that Defendant Turner's decision was substantially motivated by Plaintiff's exercise of her First Amendment rights. Defendant Turner's statement that he does not promote persons, like Plaintiff, who have open OPS investigations, does not end the inquiry, nor does it establish causation as a matter of law. As to this element of Plaintiff's claim, there is a

AO 72A
(Rev.8/82)

genuine issue of material fact for trial. See Stanley, 219 F.3d at 1292.

> ### d. Would the Government Have Made the Same Employment Decision in the Absence of the Protected Conduct?

Plaintiff argues that the government would not have made the same decision in the absence of the protected conduct because "the open OPS complaint speaking out against Department corruption is the reason [Defendants] failed to promote [Plaintiff] in accordance with the merits." [Doc. 15 at 12]. Plaintiff argues that Defendants have offered "no other reason for their failure to promote" Plaintiff. [Id.]. Again, Defendants do not directly argue this point, [Doc. 20 at 10 n.36], but reiterate their argument that Defendant Turner's policy is not to promote officers with open OPS investigations to discretionary positions, [Ex. 14, Doc. 17].

If the employee establishes that her speech was a substantial motivating factor in the subsequent employment decision, the burden shifts to Defendants to prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected speech. Cook v. Gwinnett Cnty. Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005) (internal citations omitted). In this case, Defendants have argued[7] that Plaintiff was promoted for a

---

[7]     Defendants make this argument in the section of their brief relating to Title VII gender discrimination.

legitimate, non-retaliatory reason: her open OPS file, not the exercise of her speech. [Doc. 17 at 12]. Further, in his affidavit, Defendant Turner stated that he "do[es] not appoint individuals who have open OPS investigations pending to discretionary rank positions." [Ex. 14, Doc. 17]. On its face at least, this reason for Plaintiff's non-promotion does not relate directly to Plaintiff's speech sufficiently to establish that retaliation for protected speech was a substantial motivation for Chief Turner's decision. But even accepting Defendants' factual premise that the open OPS investigation was Defendant Turner's stated reason for skipping over Plaintiff for promotion, there is still an issue of fact as to whether Plaintiff's protected speech was nevertheless a substantial motivating factor for the decision. Under these circumstances, the undersigned must necessarily find that a genuine issue of material fact also exists as to whether Defendants would have made the same decision in the absence of the protected speech. Therefore, the record evidence requires the Court to find that there is a genuine issue as to whether Plaintiff's protected speech was a motivating or causal factor in the decision to deny Plaintiff the promotion and, if so, whether Defendant would nevertheless have made the same decision in the absence of the protected speech. Accordingly, **IT IS RECOMMENDED** that Plaintiff's motion for summary

judgment, [Doc. 15], be **DENIED**, and that Defendants' motion for summary judgment, [Doc. 17], likewise be **DENIED**.

**2.  Can the City of Atlanta Be Held Liable?**

Even though a genuine issue of material fact exists as to whether Plaintiff's constitutional rights were violated, the City of Atlanta may be held liable under Section 1983 only for "acts for which [the municipality] is actually responsible." <u>Grech v. Clayton Cnty., Ga.</u>, 335 F.3d 1326, 1329 (11th Cir. 2003) (internal citation and quotation omitted); <u>accord</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978) (holding that a municipality may not be liable under Section 1983 based on the doctrine of respondeat superior). In her motion for summary judgment, [Doc. 15], Plaintiff does not argue the basis upon which she contends Defendants may be held liable under Section 1983. Accordingly, the following discussion addresses arguments from Defendants' motion for summary judgment on this issue, [Doc. 17], and Plaintiff's response, [Doc. 21].

A municipality may be held liable under Section 1983 if it took an action "pursuant to official . . . policy of some nature [that] caused a constitutional tort," <u>Campbell v. Rainbow City, Ala.</u>, 434 F.3d 1306, 1312 (11th Cir. 2006), or for "acts which the municipality officially sanctioned or ordered." <u>Manor Healthcare Corp. v. Lomelo</u>, 929 F.2d 633, 637 (11th Cir. 1991). In this case, Plaintiff is not challenging the constitutionality of any policy on

its face,[8] but, rather, "the application of a policy or custom [that] results in a deprivation of . . . constitutional rights." [Doc. 21 at 21]. Therefore, when there is no facial attack on a policy, as here, the plaintiff must establish either (1) that the constitutional violation resulted from the actions of an official fairly deemed to represent government policy, Oladeinde v. City of Birmingham, 230 F.3d 1275, 1295 (11th Cir. 2000) (citing Monell, 436 U.S. at 694), or (2) "that the municipal action was taken with deliberate indifference as to its known or obvious consequences." Am. Fed. of Labor & Congress of Indus. Organ. v. City of Miami, 637 F.3d 1178, 1187 (11th Cir. 2011) (citing Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997) (quotations omitted)); accord Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010); Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1036 (11th Cir. 2001).

Where an official's actions are not subject to review, he is considered to have policymaking authority and therefore may bind the municipality. Quinn v. Monroe Cnty., 330 F.3d 1320, 1325-26 (11th Cir. 2003) (citing Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)); Oladeinde, 230 F.3d at 1295 ("An official represents

---

[8]    See United States v. Salerno, 481 U.S. 739, 745 (1987) (holding that a person challenging a policy facially "must establish that no set of circumstances exists under which the [policy] would be valid").

government policy if he or she has final policy making authority,"
but "[t]he opportunity for meaningful review will suffice to divest
an official of any policy making authority") (internal citation
omitted); Campbell, 434 F.3d at 1313 (same). A "policymaker,"
therefore, does not necessarily involve a person who "'set[s]
policy' in a generic sense [but] . . . in § 1983 jurisprudence
. . . is a term of art that refers to the official or body that
speaks with final authority with respect to a particular
governmental decision or action." McMillian v. Johnson, 88 F.3d
1573, 1579 (11th Cir. 1996); compare also Martinez v. City of Opa-
Locka, Fla., 971 F.2d 708, 714-15 (11th Cir. 1992) (holding that
the municipality was subjected to liability under Section 1983
because the police chief had policymaking authority when, under the
City's charter, an employee "who was terminated . . . would have no
higher authority before which to plead") with Doe v. Sch. Bd. of
Broward Cnty., Fla., 604 F.3d 1248, 1264-65 (11th Cir. 2010)
(holding that School Board was not liable under Section 1983
because the Superintendent "had the authority to veto [the School
Board's] recommendation" and therefore was the final policymaker
instead of the School Board).

Defendants argue that summary judgment should be granted to
the City of Atlanta on Plaintiff's Section 1983 claim because "the
City's policies are subject to review." [Doc. 17 at 22] (citing

City of Atlanta Code of Ordinances, Article VI, Labor Relations, Div. 1, § 114-501, _et_ _seq._). Defendants argue that, therefore, "[f]inal policymaking authority over a particular area does not vest in an official whose decisions in the area are subject to meaningful administrative review." [Id. at 22-23].

On the contrary, however, Defendant Turner was in fact the "final policymaker" in this case. The APD's Standard Operating Procedures ("SOP") Code Section 4.9.2 explains that "[t]he appeal process [for adverse disciplinary actions] will be conducted in accordance with Sections 114-546 through 114-556" of the City of Atlanta Municipal Code. [Ex. 2, Doc. 17 at 9]. Section 114-546 lists five "matters constitut[ing] proper reasons for which appeals may be filed with the civil service board," but non-selection from an eligible list is not appealable. See City of Atlanta Code of Ordinances, Article VI, Labor Relations, Div. 3, § 114-546.

Removal from an eligible list is a reason for which an appeal may be filed. City of Atlanta Code of Ordinances, Article VI, Labor Relations, Div. 3, § 114-546. However, neither party argues that Plaintiff was removed from the eligible list; rather, the parties agree that Plaintiff was not selected from the list. E.g., Pl's Motion for Summary Judgment, [Doc. 15 at 11] ("[Plaintiff] was skipped on the promotion order . . . ."); Defs' Motion for Summary Judgment, [Doc. 17 at 5] ("[Plaintiff] alleges that she was . . .

24

<u>not</u> <u>chosen</u> for a discretionary appointment . . . .") (emphasis added). Non-selection from an eligible list is explicitly listed as an event for which a grievance may not be filed. City of Atlanta Code of Ordinances, Article VI, Labor Relations, Div. 2, § 114-520 (listing "[s]election from a properly certified eligibility list" as a matter for which a grievance may not be filed).

Because Defendant Turner's selection from an eligible list cannot be the subject of an appeal or grievance, Defendant Turner's decision in this area is not subject to meaningful review and he is therefore a final policymaker for the City of Atlanta. <u>Quinn</u>, 330 F.3d at 1325-26. Further, contrary to Defendants' additional argument that Defendant Turner cannot be liable as a policymaker because "he did not have final policymaking authority as it relates to HR policies or as it relates to equal opportunity employment," [Doc. 17 at 22], this argument is without merit because the challenged action need only have been taken "pursuant to a policy . . . in that particular area of the city's business." <u>Martinez</u>, 971 F.2d at 713 (citations omitted).

In <u>Martinez</u>, <u>id.</u> at 710, the Plaintiff made a claim of retaliation based on <u>free</u> <u>speech</u> because of the official's policymaking authority with respect to <u>hiring</u> and <u>firing</u>, <u>id.</u> at 714. Likewise, in this case, Plaintiff challenges retaliation based on free speech because of Defendant Turner's policymaking authority

25

with respect to her non-selection. Accordingly, because the City of Atlanta may be held liable under Section 1983 for Defendant Turner's decision not to select Plaintiff from an eligible list, Defendants' motion for summary judgment on Plaintiff's First Amendment claim via Section 1983 as to Defendant City of Atlanta, [Doc. 17], should be **DENIED**. See <u>Martinez</u>, 971 F.2d at 714-15; <u>see also</u> <u>Oladeinde</u>, 230 F.3d at 1295; <u>Campbell</u>, 434 F.3d at 1313; <u>Reid</u>, 2010 WL 1138456 at *16.

### 3. Is Defendant Turner Entitled to Qualified Immunity?

A government official "performing discretionary functions generally [is] shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Roberts v. Spielman</u>, 643 F.3d 899, 903 (11th Cir. 2011) (internal citation and quotation omitted); <u>accord</u> <u>Akins v. Fulton Cnty., Ga.</u>, 420 F.3d 1293, 1305 (11th Cir. 2005); <u>Stanley v. City of Dalton, Ga.</u>, 219 F.3d 1280, 1285 (11th Cir. 2000).

A government official is entitled to qualified immunity "unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." <u>Oliver v. Fiorino</u>, 586 F.3d 898, 905 (11th Cir. 2009)

26

(citing Pearson v. Callahan, 555 U.S. 223 (2009)). The qualified immunity analysis "is a pure question of law" at the summary judgment stage once the court has "drawn all inferences in favor of the nonmoving party to the extent supportable by the record." Scott v. Harris, 550 U.S. 372, 381 n.8 (2007); accord Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005) ("[M]aterial issues of disputed fact are not a factor in the court's analysis of qualified immunity . . . .").

### a. Was There a Constitutional Violation?

Viewing the facts in the light most favorable to Plaintiff, the undersigned finds that a constitutional violation occurred in this case. As discussed above in the Pickering analysis of steps one and two, Plaintiff's speech was on a matter of public concern, and her speech outweighed the government's legitimate interest in efficient public service. See supra pages 10-17. And, as for liability, there is evidence to support a finding of liability for retaliation based upon Plaintiff's exercise of her First Amendment rights. Id. pages 17-20.

### b. Was the Law Clearly Established?

The purpose of the second part of the qualified immunity inquiry is to determine "whether it would be 'sufficiently clear that a reasonable officer would understand that what he is doing violates that [constitutional] right." Oliver v. Fiorino, 586 F.3d

898, 907 (11th Cir. 2009) (internal citations and quotations omitted). A statutory or constitutional right is considered "clearly established" when, "in light of already-existing law, the unlawfulness of the conduct is 'apparent.'" <u>Akins</u>, 420 F.3d at 1305 (<u>citing</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). In making this determination, the Court "look[s] to the precedent of the Supreme Court of the United States, this Court's precedent, and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances." <u>Oliver</u>, 586 F.3d at 907.

The unlawfulness of a defendant's conduct is apparent when the "case law, in factual terms, has . . . staked out a bright line." <u>Id.</u> Thus, the facts of cases relied upon as precedent are important; however, they need not be "materially similar" to the instant case. <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002); <u>Akins</u>, 420 F.3d at 1305. And, the Supreme Court has also made it clear that "general statements of the law" may give a defendant "fair and clear warning." <u>Hope</u>, 536 U.S. at 741.

In First Amendment cases analyzed under the <u>Pickering</u> balance, the facts of the case "must tilt <u>decidedly</u> in favor of the plaintiff's speech in order for the defendant[] to have fair and clear notice that [he] w[as] violating the plaintiff's constitutional rights." <u>Camp v. Correctional Med. Servs., Inc.</u>, 400

AO 72A
(Rev.8/82)

Fed. Appx. 519, 520-21 (11th Cir. 2010) (<u>citing</u> <u>Cook v. Gwinnett</u>
<u>Cnty. Sch. Dist.</u>, 414 F.3d 1313, 1320 (11th Cir. 2005)).

Defendants argue that Defendant Turner is entitled to
qualified immunity and therefore cannot be sued in his individual
capacity for his performance of discretionary functions. [Doc. 17
at 25]. Defendants argue that "[o]nly in exceptional cases will
government actors have no shield against claims made against them
in their individual capacities." [Id. at 26] (citations and
quotations omitted). Plaintiff responds that Defendant Turner
should be liable in his individual capacity for retaliation in
violation of the First Amendment because "it is clear that Chief
Turner, as the Chief of the Atlanta Police Department, knows or
should know that retaliation for ones [sic] free exercise of their
first amendment rights would be violative of clearly established
law." [Doc. 21 at 24].

In this case, the facts "tilt decidedly in favor of the
Plaintiff's speech" sufficient to give notice of the violation of
constitutional rights. Plaintiff's Facebook posting exposed
possible corruption in the APD, which far outweighs the nonexistent
evidence Defendants have offered of any disruption within the APD,
even though Plaintiff's speech was less formal than the speech held
to be on a matter of public concern in <u>Stanley</u>, 219 F.3d at 1282,

29

1290,[9] or the formal complaint to the Dentistry Board in <u>Camp</u>, 400 Fed. Appx. 519. Nor was Plaintiff's Facebook posting "vulgar, insulting and defiant" as was the case in <u>Hansen</u>, 19 F.3d 577. Taken in the light most favorable to Plaintiff, the evidence would show that Chief Turner skipped over Plaintiff for a promotion for which she was otherwise entitled because of and substantially motivated by the fact that she exercised her First Amendment rights of free speech. Such a set of facts would be sufficient for Chief Turner to be on notice that what he was doing was in violation of Plaintiff's constitutional rights.

Accordingly, because the <u>Pickering</u> balance tilts decidedly in Plaintiff's favor, Defendant Turner is not entitled to qualified immunity. Therefore, **IT IS RECOMMENDED** that summary judgment be **DENIED** as to Defendant Turner in his individual capacity on the basis of qualified immunity.

**C.  Plaintiff's Title VII Gender Discrimination Claim**

Defendants argue that Plaintiff's Title VII claim for gender discrimination should be dismissed because "[a]bsent from the record and Plaintiff's pleadings are [sic] a right to sue notice." [Doc. 17 at 4]. Plaintiff responds that she "made her EEOC

---

[9]     In <u>Stanley</u>, the plaintiff told the GBI during an interview "his 'theory' that he suspected [his employer] of theft." <u>Stanley</u>, 219 F.3d at 1282.

Complaint in March of 2010 and received her right to sue notice shortly thereafter," which was "pled in Plaintiff's original complaint." [Doc. 21 at 5] (<u>citing</u> [Pl's Compl. ¶ 3]).

In <u>McDonnell Douglas Corp. v. Green</u>, the Supreme Court noted the two "jurisdictional prerequisites" to a Title VII action: "filing timely charges of employment discrimination with the [EEOC] and . . . receiving and acting upon the Commission's statutory notice of the right to sue." 411 U.S. 792, 798 (1973). Accordingly, in order to exhaust her remedies under Title VII, a plaintiff must "first file a timely charge with the EEOC." 42 U.S.C. § 2000e-5(e). Thereafter, a civil complaint must be filed within 90 days of receipt of a right to sue notice. 42 U.S.C. § 2000e-5(f)(1). If the defendant contests the issue of whether the plaintiff has exhausted her administrative remedies under Title VII before filing suit, the plaintiff has the burden of establishing that she has exhausted her remedies. <u>Green v. Union Foundry Co.</u>, 281 F.3d 1229, 1233-34 (11th Cir. 2002).

In this case, Plaintiff's complaint states that she "has fulfilled all conditions pre-requisite to bringing this claim to court in that she filed a timely complaint with the EEOC and exhausted administrative remedies. An ante-litem notice was sent to the City on April 12, 2010." [Pl's Compl. ¶ 3]. In response to Defendant's motion, however, Plaintiff failed to produce any

evidence that a right to sue notice was ever issued by the EEOC in this case. Plaintiff's reference to an ante-litem notice, which is a prerequisite to filing suit against municipal corporations under O.C.G.A. § 36-33-5, is a distinct matter from the administrative remedies that a plaintiff must exhaust before the EEOC in a Title VII case.

Without having produced any evidence that she ever received a right to sue notice, Plaintiff has not carried her burden of showing that she has exhausted her administrative remedies before bringing suit.[10] Accordingly, **IT IS RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED** on Plaintiff's Title VII gender discrimination claim. See Green, 281 F.3d at 1234 (affirming the district court's dismissal of the plaintiff's Title VII claim on summary judgment because plaintiff was "unable to present evidence of the date of his . . . receipt of the letter, or otherwise to rebut" the defendant's claim that his filing was untimely); see also Bryant v. U.S. Steel Corp., No. 10-13165, 2011 WL 2150193 at *2 (11th Cir. 2011) (affirming the district court's

---

[10]    The undersigned observes that the alleged adverse act in this case upon which the gender claims are based - Plaintiff's non-promotion - occurred on March 26, 2010. [Pl's Compl. ¶ 41]. Plaintiff's complaint was filed on April 28, 2010, barely a month later, leaving scant time for the filing of an EEOC charge, investigation by the EEOC, and issuance of a right to sue notice, assuming the charge was based on her non-promotion from the list of eligibles.

dismissal of the plaintiff's Title VII and ADA claims at the summary judgment stage because "[t]he sole piece of evidence indicating that [the plaintiff]'s suit was timely was [an] affidavit the district court properly struck").

**D.  State Law Claims**

   **1.  Whistleblower Claim**

Plaintiff brings a claim under the Georgia Whistleblower Act, which prohibits a public employer from "retaliat[ing] against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity." O.C.G.A. § 45-1-4(d)(2).

Defendants argue that Plaintiff's Facebook posting is not protected under the Whistleblower Act, because the Act only protects disclosures made to "a supervisor or other governmental agency," per the language of the statute. [Doc. 17 at 29]. Defendants also argue that Plaintiff has "fail[ed] to establish that her complaints were regarding a violation of a 'law, rule or regulation'" as defined by the Act. [Id. at 29-30].

Plaintiff responds that she "attempted to take her complaint to supervisors initially before making a more vocal disclosure of her grievances on Facebook," [Doc. 21 at 25], essentially arguing

that the Facebook post would not have occurred had Plaintiff's supervisors not "ignored her complaints." [Id.].

It is clear that Plaintiff's Facebook posting was not a protected action under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(d)(2), because the Facebook posting was not a "disclos[ure] [of] a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency . . . ." Instead, Plaintiff's Facebook posting was a posting on the internet, neither directed to a supervisor nor a government agency, notwithstanding the fact that Plaintiff alleges that she had earlier complained through her chain of command. Further, it is not clear that Plaintiff's Facebook posting complained of the violation of any specific law, rule, or regulation. See <u>Edmonds v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 302 Ga.App. 1, 6 (2009) (holding that the plaintiff's raising "possible safety concerns" was not protected under O.C.G.A. § 45-1-4(d)(2) because "neither [the plaintiff]'s complaint, his pleadings in the trial court, nor appellate brief cite[d] to a 'law, rule, or regulation' that [the defendant] allegedly violated"). Accordingly, **IT IS RECOMMENDED** that summary judgment be **GRANTED** to Defendants on Plaintiff's claim under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(d)(2).

### 2.   **Intentional Infliction of Emotional Distress Claim**

Defendants argue that summary judgment should be granted to

34

Defendants on Plaintiff's Intentional Infliction of Emotional Distress (IIED) claim because "[i]n order to sustain [such] a cause of action, the defendant's actions must have been so terrifying as naturally to humiliate, embarrass or frighten the plaintiff." [Doc. 17 at 32]. Defendants argue that, in this case, "Plaintiff has neither articulated nor proven the essential elements" for an IIED claim. [Id.].

In response, Plaintiff argues that she "consistently has the highest arrest and conviction rates over other officers with whom she works and is known for her courage and tenacity in the course of her job performance." [Doc. 21 at 26]. Therefore, Plaintiff argues, "[i]t logically follows that extreme and severe emotional distress was the result of the City's unexpected failure to promote [Plaintiff] when she has been repeatedly recognized for putting so much effort into her job." [Id. at 26-27].

To make out a prima facie case of IIED under Georgia law, a plaintiff must prove each of the following elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) the conduct must cause emotional distress; and (4) the emotional distress must be severe. Blockum v. Fieldale Farms Corp., 275 Ga. 798, 800 (2002) (citing Yarbray v. So. Bell Tel. & Co., 261 Ga. 703, 706 (1991)); Gaston v. So. Bell Tel. & Tel. Co., 674 F. Supp. 347, 352 (N.D. Ga. 1987); Bridges v.

35

<u>Winn-Dixie Atlanta, Inc.</u>, 176 Ga.App. 227, 230, 335 S.E.2d 445, 447-48 (1985).

A plaintiff bringing a claim for IIED "bear[s] a heavy burden in establishing the type of extreme and outrageous conduct necessary to sustain a claim for intentional infliction of emotional distress." <u>Mears v. Gulfstream Aerospace Corp.</u>, 225 Ga. App. 636, 640 (1997); <u>accord</u> <u>Bridges</u>, 176 Ga. App. at 229. To sustain such a cause of action, "the defendant's conduct must have been so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." <u>Lightning v. Roadway Express</u>, 60 F.3d 1551, 1558 (11th Cir. 1995) (<u>quoting</u> <u>Moses v. Prudential Ins. Co.</u>, 187 Ga.App. 222, 223-24 (1988)). Further, "[t]he defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Steed v. Fed. Nat'l Mortg. Col.</u>, 301 Ga.App. 801, 810 (2009). Whether the alleged conduct "rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." <u>Lightning</u>, 60 F.3d at 1558 (<u>quoting</u> <u>Yarbray</u>, 261 Ga. at 706).

In this case, Plaintiff has alleged that she suffered "severe anxiety and sleeplessness," [Pl's Compl. ¶ 81], as a result of not being promoted. However, Plaintiff's allegations that "[s]ince

36

speaking out in opposition to corruption, [she] has been pulled into the office of several supervisors and admonished for her speech," [id. ¶ 78], even combined with Defendants' failure to promote her, [Doc. 21 at 26-27], fall well short of the level of outrageousness that is required by Georgia law to sustain a claim for IIED. See <u>Lightning</u>, 60 F.3d at 1558 (<u>citing</u> <u>Moses</u>, 187 Ga.App. 222); <u>Steed</u>, 301 Ga.App. at 810. Even terminating an employee is not extreme and outrageous without additional evidence of egregious threats or abuse, even if the termination is unlawful. <u>Clark v. Coats & Clark, Inc.</u>, 990 F.2d 1217, 1229 (11th Cir. 1993); <u>Beck v. Interstate Brands Corp.</u>, 953 F.2d 1275, 1276 (11th Cir. 1992). A fortiorari, Plaintiff's non-promotion, even with her allegations of unfair admonishment, without more, certainly do not rise to the level of extreme and outrageous conduct. See <u>Clark</u>, 990 F.2d at 1229; <u>Beck</u>, 953 F.2d at 1276. Accordingly, **IT IS RECOMMENDED** that summary judgment on Plaintiff's intentional infliction of emotional distress claim be **GRANTED**.

### IV.
### Conclusion

For the reasons discussed herein, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment, [Doc. 15], be **DENIED**, and that Defendants' motion for summary judgment, [Doc. 17], be **GRANTED in part** and **DENIED in part**. Specifically, **IT IS RECOMMENDED** that

37

Defendants' motion for summary judgment be **GRANTED** as to all of Plaintiff's claims except Defendant City of Atlanta's liability under Section 1983 for retaliation in violation of the First Amendment and qualified immunity for Defendant Turner.

      **SO REPORTED AND RECOMMENDED**, this 29th day of August, 2011.

                                    *s/ E. Clayton Scofield*
                                  E. CLAYTON SCOFIELD III
                                  UNITED STATES MAGISTRATE JUDGE

38

AO 72A
(Rev.8/82)