**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| MARIA GRESHAM, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:10-CV-1301-RWS |
| CITY OF ATLANTA, MAJOR : | |
| PERDUE, in his official capacity, : | |
| GEORGE TURNER, in his : | |
| individual and official capacities, : | |
| | |
| Defendants. | |

**ORDER**

This case is before the Court for consideration of the Report and Recommendation [29] of Magistrate Judge E. Clayton Scofield III, recommending the following: (1) that Defendants Turner and Perdue be dismissed from this suit in their official capacities; (2) that Plaintiff's Motion for Partial Summary Judgment [15] as to her First Amendment retaliation claim be denied; (3) that Defendants' Motion for Summary Judgment [17] as to Plaintiff's First Amendment retaliation claim also be denied; (4) that summary judgment as to Defendant City of Atlanta be denied on grounds that the City may be held liable under § 1983; (5) that summary judgment as to Defendant

Turner in his individual capacity, on the basis of qualified immunity, be denied; (6) that Defendants' Motion for Summary Judgment [17] as to Plaintiff's Title VII gender discrimination claim be granted; (7) that Defendants' Motion for Summary Judgment [17] as to Plaintiff's state law tort claims be granted; and (8) that Plaintiff's hostile work environment, due process, and breach of contract claims be deemed abandoned and summary judgment as to these claims granted in favor of Defendants.

After carefully considering the Report and Recommendation, the objections thereto, and the Record, the Court enters the following Order, accepting in part and rejecting in part the Report and Recommendation.

## Background

The Court adopts the Background and Statement of Facts as set forth in the Report and Recommendation and as supplemented in the Order below.

## Discussion

**I.  Liability of Defendants Turner and Perdue in Their Official Capacities**

The Court receives the Report and Recommendation as to the liability of Defendants Turner and Perdue in their official capacities with approval and

adopts it as the Opinion and Order of the Court.  Accordingly, Defendants Turner and Perdue, in their official capacities, are **DISMISSED** from this suit.

## II.     First Amendment Retaliation via Section 1983

The Court accepts in part and rejects in part the Report and Recommendation as it pertains to the parties' cross motions for summary judgment on Plaintiff's section 1983 First Amendment retaliation claim. Specifically, and as discussed more fully below, the Court accepts the conclusion of the Report and Recommendation that Plaintiff's speech in this case was constitutionally protected as speech of a citizen pertaining to an issue of public concern.  The Court disagrees, however, with the Report and Recommendation's conclusions that Plaintiff's interest in making this speech outweighed Defendant's counterveiling interests in efficient public service, and that Defendant Turner is not entitled to qualified immunity.  Each of these points will be addressed in turn.

### A.     Plaintiff's First Amendment Rights

As stated in the Report and Recommendation, to state a claim for retaliation in violation of the First Amendment, Plaintiff, as a government employee, must show that her speech was constitutionally protected and that the speech was a substantial or motivating factor in Defendants' decision not to

3

select her from the list of employees eligible for promotion to an investigative position.  Boyce v. Andrew, 510 F.3d 1333, 1343 n.12 (11th Cir. 2007).  Whether Plaintiff has made this showing is governed by the four-part Pickering[1] analysis, under which the Court must find that (1) Plaintiff's speech involved a matter of public concern; (2) Plaintiff's interest in speaking outweighed the government's legitimate interest in efficient public service; and (3) the speech played a substantial part in the government's challenged employment decision.  Cook v. Gwinnett Cty. Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005) (citing Bryson v. Waycross, 888 F.2d 1562, 1565-66 (11th Cir. 1989)).  If the employee can make the above showing, the burden shifts to the government to show that (4) it would have made the same employment decision even in the absence of the protected speech.  Id.  The first two prongs of this test are questions of law while the latter two are questions of fact.  Id.  In light of the Court's conclusions presented below, only the first two prongs of this test must be considered.

       1.      <u>Did Plaintiff speak as a citizen on a matter of public concern?</u>

---

[1] Pickering v. Bd. of Educ., 391 U.S. 563 (1968).

4

The Court accepts the conclusion of the Report and Recommendation that Plaintiff's speech in this case was entitled to constitutional protection as speech of a citizen related to a matter of public concern. The government as employer has a stronger interest in regulating the speech of its employees than in regulating the speech of the citizenry in general. Connick v. Meyers, 461 U.S. 138, 140 (1983). Nonetheless, it is well-settled that "[a] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." Id. Accordingly, the First Amendment protects government employee speech if the employee speaks "as a citizen upon matters of public concern." Id. at 147. If, on the other hand, the employee speaks "as an employee upon matters only of personal interest," the speech is not entitled to constitutional protection. Id. An employee's speech concerns a matter of public concern if it can be "fairly considered as relating to any matter of political, social, or other concern to the community." Id. at 146.

The Magistrate Judge concluded that Plaintiff's Facebook posting addressed a matter of public concern, specifically, "the integrity of the law enforcement services" provided to the public by the Atlanta Police Department (APD). Although the Court considers this a close question, the Court accepts

5

the Magistrate Judge's conclusion that Plaintiff's speech did pertain to an issue of public concern and thus is entitled to First Amendment protection.

> 2. Did Plaintiff's interest in speaking outweigh Defendant's counterveiling interests?

Under the second prong of the Pickering analysis, the Court must weigh Plaintiff's First Amendment interests against Defendant's interest "as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568. This balancing test reflects the fact that government employers must be given "wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment," Connick, 461 U.S. at 146, and must be permitted to "take action against employees who engage in speech that 'may unreasonably disrupt the efficient conduct of government operations,'" Reid v. City of Atlanta, No. 1:08-CV-1846-JOF, 2010 WL 1138456 at *9 (N.D. Ga. Mar. 22, 2010) (quoting Tindal v. Montgomery County Comm'n, 32 F.3d 1535, 1540 (11th Cir. 1994)).

The government's interest in efficient public service is particularly acute in the context of police departments, which "have more specialized concerns than a normal government office." Id. Indeed, the Supreme Court has noted a

6

particular "need for discipline[,] esprit de corps, and uniformity" within the police force.  Kelley v. Johnson 425 U.S. 238, 246 (1976).  The Eleventh Circuit has likewise recognized the unique needs of police departments, noting, "Order and morale are critical to successful police work:  a police department is a 'paramilitary organization, with a need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as a quasi-military entity different from other public employers.'"  Hansen v. Soldenwagner, 19 F.3d 573, 577 (11th Cir. 1994) (quoting Bryson v. City of Waycross, No. CV588-017, 1988 WL 428478 at *9 (S.D. Ga. Nov. 1, 1988), aff'd, 888 F.2d 1562 (11th Cir. 1989)).

Several factors must be considered in determining whether the government's legitimate interest in efficient public service outweighs the government employee's interest in protected freedom of speech.  In particular, courts must assess "'(1) whether the *speech at issue* impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made.'"  Martinez v. City of Opa-Locka, 971 F.2d 708, 712 (11th Cir. 1992) (citing Bryson, 888 F.2d at 1567).

7

The Court finds that the Report and Recommendation failed to give sufficient consideration to Defendant's interests in conducting the Pickering balancing test.  In its submissions to the Court, Defendant argued that Plaintiff's speech violated APD Standard Operating Procedure (SOP) Work Rule 4.1.06, Criticism, which provides:

> Employees will not publicly criticize any employee or any order, action, or policy of the Department except as officially required.  Criticism, when required, will be directed only through official Department channels, to correct any deficiency, and will not be used to the disadvantage of the reputation or operation of the Department or any employees.

Def.'s Mot. Summ. J., Dkt. No. [17] at 15.  Defendant further argued that Plaintiff's speech, in violating this rule, impeded the ability of the APD to investigate, internally, what the Plaintiff perceived to be wrongdoing on the part of another officer.  Id. at 19.  This, in turn, jeopardized Defendant's ability to "develop a collegial atmosphere, harmonious relationships and respect for the APD's investigative and discipline policy . . . ."  Def.'s Opp'n to Pl.'s Mot. Summ. J., Dkt. No. [20] at 10.

The Report and Recommendation found that Defendants argue only in *theory* that Plaintiff's speech caused disruption in the government workplace, and that, in any event, an interest in "collegiality and harmony" cannot

8

outweigh the Plaintiff's First Amendment interest. The Court believes, however, that this conclusion improperly discounts Defendants' asserted interests. First, as the Supreme Court stated in Connick,

> When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate. Furthermore, we do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.

461 U.S. at 151-52. Thus, the fact that Defendants have not come forward with specific evidence of workplace disruption is not fatal to their argument. Defendants should not be required to allow employee speech to completely erode the loyalty and discipline of the police force before they can take action against such speech.

Furthermore, the Report and Recommendation understates the importance of "collegiality and harmony" to the functioning of a police force. Indeed, the Eleventh Circuit has explicitly vindicated these very interests in the context of assessing a First Amendment retaliation claim against a city police force. In Busby v. City of Orlando, the plaintiff, a former city police officer, claimed the police force violated her First Amendment rights by firing her in retaliation for "publicizing malfeasance by her supervisors." 931 F.2d 764, 773

9

(11th Cir. 1991).  The plaintiff sent letters and memos critical of other officers' conduct to multiple persons outside the department, in violation of the police department's complaint procedure policy, which required police officers to give the department an opportunity to investigate alleged misconduct internally before complaining publicly.  Id. at 769-70.  Pursuant to Pickering balancing, the Eleventh Circuit stressed the importance of the police department interests at stake in the case:[2]

> On Busby's side of the *Pickering* scale is her interest in expressing her opinion on the alleged malfeasance of her superiors.  On appellees' side of the scale is their interest in maintaining loyalty, discipline, good working relationships among the employees, and, in general, the [police department's] reputation. . . .  In this regard, appellee's case is strengthened by the fact that the [police department] is a quasi-military organization.  In quasi-military organizations such as law enforcement agencies, comments concerning coworkers' performance of their duties and superior officers' integrity can directly interfere with the confidentiality, esprit de corps and efficient operation of the police department.

Id. at 774 (internal quotations and citations omitted).  The court continued:

> Discipline is a necessary component of a smoothly-operating police force.  Although this necessity of discipline does not rise to the same level as required by the military, . . . discipline must be maintained among police officers during periods of active duty. . . .  We agree that courts should consider and give weight to the need for maintaining a

---

[2] Because the Eleventh Circuit in Busby decided the case on grounds of qualified immunity, which it granted to the defendants, it did not "decide the precise result of applying the *Pickering* balancing test to Busby." Id. at 774.

10

>close working relationship in quasi-military organizations like police departments.

Id. (internal quotations and citations omitted).

In this case, Defendants have the same interest as the appellees in Busby in maintaining solidarity, order, and discipline within the police force, and in maintaining public trust and confidence in its capabilities.  Plaintiff's Facebook comments threaten these interests by imputing to the police force nepotism or corruption and by, more generally, weakening the public appearance of the police force as a unified "force."  Instead, Plaintiff's comments portray the police force as riddled with infighting, insubordination, and dysfunction.  These are the very dangers recognized by the Eleventh Circuit in Busby that courts must guard against when considering a police department's interests in limiting employee speech critical of the department's internal affairs.

On the other side of the scale, the Court recognizes Plaintiff's First Amendment interest in speaking out against what she perceives to be unethical conduct within the police force.  Indeed, the Court believes that the ability of the citizenry to expose public corruption is one of the most important interests safeguarded by the First Amendment.

11

As for the form of Plaintiff's speech, Plaintiff, it appears,[3] did not present her grievances to superiors or any other persons in a position to change police department policy or sanction employees; she did not prepare any documentation, such as a formal complaint, specifically articulating the alleged misconduct; nor did she seek to expose the alleged misconduct to the public, generally, such as through radio, television, newspapers, or even a meeting at City Hall.  Instead, Plaintiff chose to address the alleged misconduct through a "newsfeed" post on her personal profile of the social networking website, Facebook.  While this choice of forum certainly does not exempt her speech from First Amendment protection, which extends to all forms of protected speech, it does suggest that her interest in making the speech is less significant than if she had chosen a more public vehicle, calculated to lead to serious public scrutiny of the APD's internal affairs.

The content of Plaintiff's speech likewise suggests that her First Amendment interests are somewhat diminished.  The speech at issue reads as follows:

---

[3] Although the Report and Recommendation asserts that Plaintiff made her comments on Facebook only after attempting to complain through official channels, it cites only Plaintiff's complaint in support of this contention.  However, Plaintiff on summary judgment presented no evidence that she sought to lodge a formal complaint through official police channels.

12

> Who would like to hear the story of how I arrested a forgery perp at Best Buy only to find out later at the precinct that he was the nephew of an Atlanta Police Investigator who stuck her ass in my case and obstructed it?? Not to mention the fact that while he was in my custody, she took him into several other rooms alone before I knew they were related. Who thinks this is unethical?

While Plaintiff characterizes these comments as a "public outcry of [the Police Investigator's] behavior," Pl.'s SMF, Dkt. No. [15] at ¶ 4, the Court is not convinced that Plaintiff was truly *crying out to the public* about police department misconduct, as opposed to venting frustration with a superior. Although Plaintiff's speech does allege "unethical" misconduct, it does so only loosely, in a non-specific and largely rhetorical fashion.

Given the strength of Defendants' interest in investigating workplace misconduct internally, in maintaining unity and discipline within the police force, and in preserving public confidence it its abilities, the Court disagrees with the conclusion of the Report and Recommendation that Plaintiff's First Amendment interests outweigh those of Defendants. Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim, and the Court need not consider the remaining two prongs of the Pickering retaliation analysis.

13

### B. Qualified Immunity of Defendant Turner

Even if the balance of interests favored Plaintiff, the Court finds that Defendant Turner is entitled to the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities. See Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Officials are shielded "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The qualified immunity analysis consists of a two-step analysis. First, the court addresses the "threshold question" of whether the facts as alleged, viewed in the light most favorable to the plaintiff, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Only if there is a constitutional violation does the court proceed to the second step to determine whether that right was clearly established. Id.

A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.'" Vaughan v. Cox, 316 F.3d 1210, 1212 (11th Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed.

14

2d 523 (1987)).  While the fact patterns of prior cases used to show that a right is clearly established need not be "fundamentally similar" or even "materially similar," the salient question is whether the law at the time of the alleged violation gave officials "fair warning" that their acts were unconstitutional. Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S.730, 740, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).  The qualified immunity analysis "is a pure question of law" at the summary judgment stage once the court has "drawn all inferences in favor of the nonmoving party to the extent supportable by the record." Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

Defendant Turner was exercising a discretionary function when making his decision concerning the promotion at issue.  In order to determine if Defendant Turner is entitled to qualified immunity, the Court must first determine whether the facts establish a constitutional violation.  The Court has concluded that Plaintiff's First Amendment rights were not violated.  Therefore, Defendant Turner is entitled to qualified immunity.  However, even if Defendant Turner's actions were found to have violated Plaintiff's First Amendment rights, he would be entitled to qualified immunity because those rights were not clearly established.

In Busby, the Eleventh Circuit addressed the issue of qualified immunity in a factual context similar to the present case.  The Court held:

> The Supreme Court has never established a bright-line test for determining when a public employee may be disciplined in response to that employee's speech.  Instead, Pickering established a case-by-case balancing of interests test. . . .Because no bright-line standard exists to put the employer on notice of a constitutional violation, this circuit has recognized that a public employer is entitled to immunity from suit unless the Pickering balance 'would lead to the inevitable conclusion that the discharge of the employee was unlawful.'

Busby, 931 F. 2d at 773-74.  The Court found that it did not have to decide the precise result of applying the Pickering test, but had to "only decide whether such a result would be so evidently in favor of protecting the employee's right to speak that reasonable officials in appellees' place would necessarily know that the termination of [Busby] under these circumstances violated [Busby's] constitutional rights."  Id. at 774 (internal quotations omitted).

In the present case, this Court found that the balancing of interests favored the government's legitimate interest in efficient public service.[4]  Having made that finding, the Court is compelled to conclude that Defendant Turner

---

[4]The Court acknowledges that this conclusion is contrary to the conclusion in the Report and Recommendation.  These results point up the uncertainty of the analysis and support the conclusion that Defendant Turner could not have been expected to know that his conduct was unlawful.

16

could not have been expected to know that his failure to promote Plaintiff would violate any constitutional right of Plaintiff.  Therefore, the Court concludes that the constitutional right of Plaintiff in this instance was not clearly established. Therefore, even if Plaintiff's constitutional rights were violated, Defendant Turner is entitled to qualified immunity.

Based on the foregoing, summary judgment is **GRANTED** to Defendant Turner in his individual capacity.  Accordingly, summary judgment is also **GRANTED** to the City of Atlanta.  Plaintiff's Partial Motion for Summary Judgment is correspondingly **DENIED**.

### III.   Plaintiff's Title VII Gender Discrimination Claims

The Court receives the Report and Recommendation as to Plaintiff's Title VII gender discrimination claims with approval and adopts it as the Opinion and Order of the Court.  Accordingly, Defendants' Motion for Summary Judgment as to these claims is hereby **GRANTED**.

### IV.   Plaintiff's State Law Tort Claims

The Court receives the Report and Recommendation as to Plaintiff's state law tort claims with approval and adopts it as the Opinion and Order of the Court.  Accordingly, Defendants' Motion for Summary Judgment as to these claims is **GRANTED**.

17

AO 72A
(Rev.8/82)

### V. Plaintiff's Hostile Work Environment, Due Process, and Breach of Contract Claims

The Court receives the Report and Recommendation as to Plaintiff's hostile work environment, due process, and breach of contract claims with approval and adopts it as the Opinion and Order of the Court.  Accordingly, these claims are deemed abandoned by Plaintiff and summary judgment is **GRANTED** in Defendants' favor.

## Conclusion

In light of the foregoing, Defendants' Motion for Summary Judgment [17] is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment [15] is correspondingly **DENIED**.

**SO ORDERED**, this  29th  day of September, 2011.

_____
**RICHARD W. STORY**
United States District Judge