**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MARIA GRESHAM, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:10-CV-1301-RWS |
| CITY OF ATLANTA, MAJOR | : | |
| PERDUE, in his official capacity, | : | |
| and CHIEF GEORGE TURNER, | : | |
| in his individual and official | : | |
| capacities. | | |
| | | |
| Defendants. | | |

## **ORDER**

This case comes before the Court on Plaintiff Maria Gresham's Motion for Reconsideration [34], Motion for Oral Argument in Support of her Motion for Reconsideration [35], and Request to File an Amended Motion for Reconsideration [36]. After reviewing the Record, the Court enters the following Order.

### **Preliminary Matters**

As a threshold matter, the Court **GRANTS** Plaintiff's Request to File an Amended Motion for Reconsideration [36] and, accordingly, **DENIES as moot** Plaintiff's original Motion for Reconsideration [34]. The Court further finds

that oral argument is not necessary to facilitate resolution of Plaintiff's Amended Motion for Reconsideration and therefore **DENIES** Plaintiff's Motion for Oral Argument in Support of Her Motion for Reconsideration [35].

## Background[1]

### I. Factual Background

On April 28, 2010, Plaintiff Maria Gresham ("Plaintiff" or "Gresham") filed this civil action against Defendants the City of Atlanta, Major Moses Perdue in his official capacity, and Chief George Turner in his individual and official capacities, arising out of her employment as a police officer in the Atlanta Police Department ("APD"). In the Complaint, Plaintiff raised, among other claims, a claim for retaliation in violation of Plaintiff's First Amendment right to free speech. The Court's rulings with respect to this claim are the subject of the instant Motion for Reconsideration. The facts giving rise to Plaintiff's First Amendment retaliation claim are as follows:

In December of 2009, Plaintiff arrested an individual by the name of Jeriel Scrubb ("Scrubb"), who, Plaintiff later learned, was the nephew of APD

---

[1] Unless otherwise indicated, the following background facts are taken from the Report and Recommendation [29] of Magistrate Judge E. Clayton Scofield, III.

2

investigator Barbara Floyd ("Floyd"). Plaintiff contends, and recorded in the arrest report, that during the arrest, Floyd took Scrubb alone to another room, where she removed money and two cell phones from his pocket and possibly spoke to him. Following this incident, on December 15, 2009, Plaintiff posted the following "newsfeed" on her Facebook account:

> Who would like to hear the story of how I arrested a forgery perp at Best Buy only to find out later at the precinct that he was the nephew of an Atlanta Police Investigator who stuck her ass in my case and obstructed it?? Not to mention the fact that while he was in my custody, she took him into several other rooms alone before I knew they were related. Who thinks this is unethical?

In January of 2010, the APD's Office of Professional Standards ("OPS") received a complaint regarding Plaintiff's Facebook posting, which posting allegedly violated APD Work Rule 4.1.06 ("Criticism"). This rule provides:

> Employees will not publicly criticize any employee or any order, action, or policy of the Department except as officially required. Criticism, when required, will be directed only through official Department channels, to correct any deficiency, and will not be used to the disadvantage of the reputation or operation of the Department or any employees.

As a result of the pending OPS investigation and Defendant Turner's policy of not appointing officers with open OPS investigations to discretionary rank positions, Plaintiff became ineligible for promotion to investigator. Thus,

3

Defendant Turner did not promote Plaintiff to investigator in the Spring of 2010, when other promotions were made. It is undisputed that Plaintiff was not promoted as a result of the pending OPS investigation.

After the conclusion of the OPS investigation, the charge against Plaintiff was sustained and she was given an oral admonishment. The OPS file was closed in September of 2010, at which time Plaintiff became eligible for promotion. Nonetheless, on April 28, 2010, Plaintiff filed her Complaint arguing, among other things, that she was retaliated against in violation of the First Amendment.

## II.     **Procedural Background**

On November 22, 2010, Plaintiff moved for summary judgment [15] on her First Amendment retaliation claim. Shortly thereafter, on November 25, 2010, Defendants filed a motion for summary judgment [17] on all claims raised in the Complaint. The parties' motions for summary judgment were submitted to Magistrate Judge Scofield for a Report and Recommendation, which concluded, among other things, that Defendants' Motion for Summary

4

Judgment on Plaintiff's First Amendment retaliation claim should be denied.[2] This recommendation was based on findings that (1) Plaintiff's First Amendment rights had been violated, as Plaintiff's speech was constitutionally protected and her interest in speaking stronger than the government's interest in efficient public service, and that (2) Defendant Turner was not entitled to qualified immunity.

By Order dated September 30, 2011, the Court accepted in part and rejected in part the Report and Recommendation. (Dkt. [31].) In particular, the Court rejected the recommendation that Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim be denied. (Id. at 3.) While accepting the conclusion of the Report and Recommendation that Plaintiff's speech was entitled to constitutional protection (id. at 3, 5-6), the Court concluded that Plaintiff's interest in speaking did not outweigh the government's interest in promoting the efficiency of its public services, and, therefore, that Plaintiff's First Amendment rights had not been violated (id. at 6-13). The Court further found, contrary to the Report and Recommendation,

---

[2] The Report and Recommendation also concluded that Plaintiff's motion for summary judgment on her First Amendment retaliation claim should be denied.

5

that even if Plaintiff's First Amendment rights had been violated, Defendant Turner was entitled to qualified immunity because those rights were not clearly established. (Id. at 15.) Accordingly, the Court granted Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim. (Id. at 17.) Plaintiff now moves the Court to reconsider these rulings.

Plaintiff argues that her Motion for Reconsideration should be granted because on the date the Court issued its Order, Plaintiff still had two days to respond to Defendants' objections to the Report and Recommendation. (Am. Motion for Reconsid., Dkt. [36] at 5-6.) Plaintiff thus contends that she was deprived of an opportunity to clarify several key issues, which warrants Court consideration of the instant motion. (Id. at 6.) Plaintiff further contends that on reconsideration, the Court should accept the recommendation of the Magistrate Judge and deny Defendants' motion for summary judgment on her First Amendment claim.

In support of this contention, Plaintiff first argues that the Court made several errors of fact which led it to give undue weight to Defendants' interests as compared to Plaintiff's interests in speech. In particular, Plaintiff contends that the Court erred as a factual matter in concluding that Plaintiff did not

6

attempt to resolve her grievances within the APD before making her comments on Facebook. (Id. at 6.) Contrary to this finding, Plaintiff argues that she attempted to file a formal complaint with her superiors and only turned to Facebook as a last result, when the department proved unwilling to launch an internal investigation. (Id.) Relatedly, Plaintiff argues that as no investigation into Floyd's conduct had been commenced as of the time Plaintiff posted her comments on Facebook, the Court should not have given any weight to Defendants' summary judgment argument–that Plaintiff's speech interfered with Defendants' ability to conduct an internal investigation. (Id. at 6-7.)

Second, Plaintiff argues that, partly as a result of the aforementioned errors of fact, the Court erred as a matter of law in finding that Plaintiff's speech interests were outweighed by the interests of Defendants. (Id. at 8-16.) Finally, Plaintiff argues that the Court erred in holding that even if Plaintiff's First Amendment rights had been violated, Defendant Turner is entitled to qualified immunity. (Id. at 16-17.) The Court considers these contentions below.

**Discussion**

## I. Legal Standard

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but rather, only when "absolutely necessary." LR 7.2(E), NDGa. Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003). A motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." Id. at 1259. Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001). Finally, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." Pres.

8

Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

**II. Plaintiff's Motion**

In light of Plaintiff's assertion that she had no opportunity to respond to Defendants' objections to the Report and Recommendation, the Court **GRANTS** Plaintiff's Amended Motion for Reconsideration [36]. Having reviewed the contentions raised in the Amended Motion, however, the Court finds that its earlier ruling granting Defendants' Motion for Summary Judgment on Plaintiff's First Amendment retaliation claim was correct. Accordingly, on reconsideration, the Court again **GRANTS** Defendants' Motion for Summary Judgment [17] on Plaintiff's First Amendment retaliation claim.

A. First Amendment Violation

Plaintiff's first argument directed at the Court's earlier Order is that the Court failed to consider facts, which would have led the Court to find that Plaintiff's speech interests outweighed the Defendants' interests, and therefore that Plaintiff's First Amendment rights were violated. This argument has no merit. As set out in the Report and Recommendation and the Court's earlier Order, to state a claim for retaliation in violation of the First Amendment right

9

to free speech, a government employee must demonstrate, among other things, that her interests in speaking were not outweighed by the government's legitimate interest in efficient public service. (Order, Dkt. [31] at 4 (citing Cook v. Gwinnett Cnty. Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005)).) This balancing test reflects the fact that government employers must be given "wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment," Connick v. Meyers, 461 U.S. 138, 146 (1983), and must be permitted to "take action against employees who engage in speech that 'may unreasonably disrupt the efficient conduct of government operations,'" Reid v. City of Atlanta, No. 1:08-CV-1846-JOF, 2011 WL 1138456, at *9 (N.D. Ga. Mar. 22, 2010) (quoting Tindal v. Montgomery County Comm'n, 32 F.3d 1535, 1540 (11th Cir. 1994)).

As the Court explained in detail in its prior Order (Dkt. [31] at 6-11), the government's interest as employer in efficient public service is particularly strong in the context of a police department. The Supreme Court has noted the particular need for governments to maintain "discipline[,] esprit de corps, and uniformity" within their police force. Kelley v. Johnson, 425 U.S. 238, 246 (1976). Similarly, the Eleventh Circuit has noted that "[o]rder and morale are

10

critical to successful police work: a police department is a paramilitary organization, with a need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as a quasi-military entity different from other public employers." Hansen v. Soldenwagner, 19 F.3d 573, 577 (11th Cir. 1994) (internal quotation marks and citation omitted). Stressing the importance of these interests in greater detail, the Eleventh Circuit stated as follows:

> On appellees' side of the scale is their interest in maintaining loyalty, discipline, good working relationships among the employees, and, in general, the [police department's] reputation. . . . In this regard, appellee's case is strengthened by the fact that the [police department] is a quasi-military organization. In quasi-military organizations such as law enforcement agencies, comments concerning coworkers' performance of their duties and superior officers' integrity can directly interfere with the confidentiality, esprit de corps and efficient operation of the police department.

> Discipline is a necessary component of a smoothly-operating police force. Although this necessity of discipline does not rise to the same level as required by the military, . . . discipline must be maintained among police officers . . . . We agree that courts should consider and give weight to the need for maintaining a close working relationship in quasi-military organizations like police departments.

Busby v. City of Orlando, 931 F.2d 764, 733 (11th Cir. 1991).³

Plaintiff challenges the Court's ruling that Plaintiff did not seek to resolve her grievances within the APD prior to making her comments on Facebook. (Order, Dkt. [31] at 12.) Plaintiff argues that contrary to this ruling, she attempted to file a complaint with her superiors and turned to Facebook only as a last resort, after the department failed to launch an internal investigation into Floyd's conduct. (Pl.'s Am. Mot. for Reconsideration, Dkt. [36] at 6.) Indeed, Plaintiff alleges in the Complaint that she made oral complaints to her supervisors regarding Floyd's conduct, and the Record contains some evidence that Plaintiff sought to file a formal complaint within the APD regarding that conduct. (Compl. Dkt. [1] ¶ 29; Compl. Ex. E, Dkt. [1-1] at 18 of 23.) Specifically, Plaintiff relies on a Memorandum she sent to an APD sergeant following a preliminary hearing on the charges filed against Plaintiff's arrestee, Scrubb (Compl. Ex. B, Dkt. [1-1] at 9 of 23), which Plaintiff

---

³ The Court recognizes and has considered Plaintiff's arguments that Busby is factually distinguishable from the case at bar and should not control the outcome of this case. The particular interest of a police department in maintaining loyalty, discipline, and collegiality within its ranks, however, noted by the Busby court, is equally relevant to this case as it was to the court's decision in Busby. Furthermore, the factual distinctions that exist between this case and Busby do not change the Court's decision that these interests outweigh Plaintiff's speech interests in this case.

12

contends "put the department on notice via paperwork that Investigator Floyd was recruiting her acquaintances on the department to assist in covering up her corruption . . . ." (Pl.'s Am. Mot. for Reconsideration, Dkt. [36] at 6.) Despite this evidence, however, the Court finds Plaintiff's argument untenable given the sequence of events in this case.

The Record shows that the arrest giving rise to Plaintiff's Facebook comments occurred on December 8, 2009.[4] (Compl. Ex. A, Dkt. [1-1] at 1 of 23.) The Record also shows that Plaintiff made her Facebook comments seven days later, on December 15, 2009. (Compl. Ex. C, Dkt. [1-1] at 10 of 23.) Finally, the Record shows that the preliminary hearing giving rise to Plaintiff's APD memorandum, on which Plaintiff so heavily relies, was not held until December 22, 2009, *after* Plaintiff already had made her comments on Facebook. (Compl. Ex. B, Dkt. [1-1] at 9 of 23.) While Plaintiff indeed may have made oral complaints to her superiors after the arrest on December 8 and prior to making the Facebook comments on December 15, the Court finds the argument disingenuous that Plaintiff turned to Facebook only "after she

---

[4] The arrest report appears to have been prepared on December 9, 2009 but reports that the incident occurred on December 8, 2009. (Compl. Ex. A, Dkt. [1-1] at 1 of 23.)

13

received no redress from department officials . . . ." (Pl.'s Am. Mot. for Reconsideration, Dkt. [36] at 7 of 21.) Plaintiff allowed the department a mere seven days to provide that redress.

Accordingly, despite Plaintiff's arguments, the Court still concludes that Plaintiff's speech interests did not outweigh the government's interests in "maintaining unity and discipline within the police force [ ] and in preserving public confidence in its abilities." (Order, Dkt. [31] at 13.) Plaintiff's legal contentions are similarly unavailing and, indeed, are not the types of arguments that properly may be raised on a motion for reconsideration. Thus, contrary to Plaintiff's arguments directed at the Court's earlier Order, the Court remains convinced that Plaintiff's speech interests were outweighed by Defendants' counterveiling interests, and that Plaintiff's First Amendment right to free speech was not violated.

### B. Qualified Immunity of Defendant Turner

Even if the balance of interests favored Plaintiff, however, the Court nonetheless finds–as it did in its prior Order–that Defendant Turner is entitled to qualified immunity. Plaintiff offers no argument in her Amended Motion for Reconsideration that persuades the Court otherwise or merits lengthy

14

discussion. Accordingly, for the reasons set out in detail in the Court's prior Order (Dkt. [31] at 13-17), even if Defendant Turner's actions were found to violate the First Amendment, he would be entitled to qualified immunity. Defendants thus would be entitled to summary judgment on this basis.

## Conclusion

In accordance with the foregoing, the Court hereby **GRANTS** Plaintiff's Amended Motion for Reconsideration [36]. On reconsideration, however, the Court again **GRANTS** Defendants' Motion for Summary Judgment [17] on Plaintiff's First Amendment retaliation claim.

**SO ORDERED**, this  7th  day of May, 2012.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)